**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHN WHEELER,

    Plaintiff,

v.                                    Case No. 3:04-cv-1147-J-32MCR

FLORIDA DEPARTMENT OF
CORRECTIONS

    Defendant.

## **ORDER**[1]

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 35), which raises the issue of whether this Title VII case must be dismissed based on judicial estoppel because plaintiff failed to list his Title VII claim (which was before the EEOC when plaintiff filed for bankruptcy) as a potential asset in plaintiff's bankruptcy case. Plaintiff filed a response in opposition to the motion for summary judgment (Doc. 42). On June 19, 2006, the Court held an evidentiary hearing, wherein the parties presented argument and evidence (via testimony and exhibits). (Doc. 53). On June 30, 2006, the parties submitted supplemental memoranda based upon the testimony elicited and the evidence admitted at the hearing. (Docs. 54 &

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

55).  On July 12, 2006, defendant filed a Motion for Leave to File a Further Memorandum (Doc. 56); plaintiff opposed (Doc. 57).

## I.   APPLICABLE LAW

In Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002), in affirming summary judgment against a Title VII plaintiff based on judicial estoppel, the Eleventh Circuit decided the first in a trilogy of judicial estoppel cases that set forth the applicable standards for the application of that doctrine.  "Judicial estoppel is an equitable doctrine invoked at a court's discretion."  Id. at 1285 (citation omitted).  "Under this doctrine, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  Id. (citation and quotation omitted). "The purpose of the doctrine 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)).

"In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case."  Id. at 1285.  "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding."  Id. (quotation omitted).  "Second, such inconsistencies must be shown to have been calculated to make a mockery of the justice system."  Id. (quotation omitted).[2]  "[T]hese two

---

[2] The Supreme Court has "enumerate[d] several factors that inform a court's decision concerning whether to apply the doctrine in a particular case."  Burnes, 291 F.3d at 1285 (citing New Hampshire, 532 U.S. at 750-51).  "Courts typically consider:

-2-

enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." Id. at 1286.

In 2003, the Eleventh Circuit decided De Leon v. Comcar Industries, Inc., 321 F.3d 1289 (11th Cir. 2003) and Barger v. City of Cartersville, Ga., 348 F.3d 1289 (11th Cir. 2003). The De Leon court held that, "the rule established in Burnes [involving a Chapter 13 petition converted into a Chapter 7 case], that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court, applies equally in Chapter 13 bankruptcy cases." 321 F.3d at 1291. The De Leon court further held, "[b]ecause De Leon certainly knew about his claim and possessed a motive to conceal it...we can infer from the record his intent 'to make a mockery of the judicial system.'" Id. at 1292 (quoting Burnes, 291 F.3d at 1285-87).

In Barger, the Court noted that "[f]or purposes of judicial estoppel, intent is a

---

(1) whether the present position is 'clearly inconsistent' with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party." Id. "This list is by no means exhaustive, however...." Id. The Eleventh Circuit has stated that the two factors that it considers "are consistent with the Supreme Court's instructions referenced above, and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case." Id. at 1285-86.

-3-

purposeful contradiction - not simple error or inadvertence. 'Deliberate or intentional manipulation can be inferred from the record,' where the debtor has knowledge of the undisclosed claims and has motive for concealment." 348 F.3d at 1294 (citation omitted). The Barger court reiterated the holding of De Leon when it stated, "the recent opinion in De Leon confirmed that Burnes established the rule for this Circuit...'that judicial estoppel bars a plaintiff from asserting claims previously undisclosed to the bankruptcy court where the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court....'" Id. at 1296 (quoting De Leon, 321 F.3d at 1291).

In 2004, the Eleventh Circuit decided Parker v. Wendy's Int'l, Inc., 365 F.3d 1268 (11th Cir. 2004), a case with similar facts to those at issue in Burnes, De Leon and Barger, but decided the case on standing, rather than judicial estoppel. "[A] pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." Parker, 365 F.3d at 1272 (citing Barger, 348 F.3d at 1292). Section 541(a)(1) of the Bankruptcy Code provides that essentially all of the debtor's assets are part of the bankruptcy estate immediately upon the filing of the bankruptcy petition. Id.; 11 U.S.C. § 541(a)(1). "Such property includes causes of action belonging to the debtor at the commencement of the bankruptcy case." Id. (citation omitted). "Thus, a trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate." Id. (citation omitted); 11

U.S.C. § 323. At the close of the bankruptcy case, property of the estate that is not abandoned back to the debtor under 11 U.S.C. § 554 and that is not administered in the bankruptcy proceedings remains the property of the estate. Id.; 11 U.S.C. § 554(d). "Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate." Id. (citations omitted). The Parker court ultimately reversed the district court's grant of summary judgment to defendant and held, "the doctrine of judicial estoppel was improperly invoked. The claim against [the defendant] belongs to the bankruptcy estate and its representative, the trustee. The trustee made no false or inconsistent statement under oath in a prior proceeding and is not tainted or burdened by the debtor's misconduct." Id. at 1273.

Recently, in Ajaka v. Brooksamerica Mortgage Corp., --- F.3d ---, 2006 WL 1765425, *3 n. 7 (11th Cir. June 29, 2006), the Eleventh Circuit once again considered the doctrine of judicial estoppel. In Ajaka, the Court noted, "[j]udicial estoppel is intended to be a flexible rule in which courts must 'take into account all of the circumstances of each case in making our determination.'" 2006 WL 1765425 at *2 (quoting Palmer & Cay, Inc. v. Marsh & McLennan Cos., 404 F.3d 1297, 1307 n. 17 (11th Cir. 2005)). "When considering a party's motive and intent and whether it justifies applying judicial estoppel, [the Eleventh Circuit] require[s] that the intent be 'cold manipulation and not an unthinking or confused blunder,'" Ajaka, 2006 WL 1765425, *3 n. 7 (quoting Johnson Serv. Co. v. Transamerica Ins. Co., 485 F.2d 164, 175 (5th Cir. 1973)).

## II.     FACTUAL BACKGROUND

On or about January 28, 2004, plaintiff John Wheeler ("plaintiff") filed an Amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that the Florida Department of Corrections ("defendant") retaliated against him in violation of Title VII, 42 U.S.C. § 2000e, et seq. (Doc. 53, Ex. "2"). Plaintiff alleged in the charge that defendant retaliated against him because he opposed sexual harassment at the Baker County Correctional Institution and participated as a witness in a sexual harassment claim. (Id.). Plaintiff also alleged that he was further retaliated against after he filed his original charge of discrimination on November 12, 2003. (Id.); (Doc. 53, Ex. "1").

On May 25, 2004, almost four months after filing the amended charge, plaintiff filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida. (Doc. 35-1, Ex. "D"). Plaintiff, who was represented by attorney Ron Peacock in the bankruptcy proceeding, signed, under penalty of perjury, a Statement of Financial Affairs contained in the petition which asked plaintiff to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Id.). Plaintiff checked a box indicating "None." (Id.).

On September 13, 2004, plaintiff received a Discharge of Debtor. (Doc. 35-3, Ex. "F"). On October 25, 2004, the bankruptcy court entered an Order Approving

Trustee's Final Report, Discharging Trustee, Canceling Bond and Closing Estate. (Doc. 35-3, Ex. "E").

On October 27, 2004, just two days after the closing of the bankruptcy estate, plaintiff filed the Complaint in this case.[3] (Doc. 1). On November 2, 2005, defendant filed a motion for summary judgment on the basis of judicial estoppel, in which it argues that plaintiff should be judicially estopped from pursuing his Title VII claim because he concealed it from the bankruptcy court and his creditors. (Docs. 35 & 54). Defendant also argues that because the Title VII claim is a pre-petition cause of action, it is the property of the Chapter 7 bankruptcy estate, and plaintiff lacks standing to pursue it. (Id.).

On November 14, 2005, the United States Trustee moved to re-open the bankruptcy case to amend the Statement of Financial Affairs to include plaintiff's pending claim against defendant. (Doc. 42-3, Ex. "2"). On November 17, 2005, the bankruptcy court re-opened the bankruptcy case and appointed a trustee, Gregory Crews, Esquire. (Doc. 42-4, Ex. "3").

During the June 19, 2006 evidentiary hearing, the Court heard testimony from plaintiff, Cassandra Wheeler (plaintiff's wife), Gregory Crews, Attorney Ron Peacock and Nancy Johnson (Mr. Peacock's paralegal). Plaintiff essentially testified that Mrs. Wheeler handled all facets of the filing of their Chapter 7 bankruptcy petition. Mrs.

---

[3] Shortly after July 30, 2004, plaintiff received a Right to Sue letter from the EEOC. (Doc. 53, Ex. "3"). This occurred before the closing of the bankruptcy case.

Wheeler hired Mr. Peacock, met with Mr. Peacock in his office, signed the retainer agreement with Mr. Peacock, obtained the appropriate forms for filing, filled out the petition by herself (including the Statement of Financial Affairs) and merely presented the petition to her husband for signing.  Plaintiff never personally met with Mr. Peacock, never reviewed the petition before he signed it and never discussed the accuracy of the petition with his wife before she returned it to Mr. Peacock's office for filing.  The text immediately above plaintiff's signature on the Statement of Financial Affairs provides: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct."  (Doc. 53, Ex. "4A").

On July 2, 2004, plaintiff attended a creditor's meeting at the United States Courthouse in Jacksonville, Florida to meet with the United States Trustee.  During the meeting, plaintiff informed the Trustee that the information in the petition, including the Statement of Financial Affairs, was true and accurate.  However, plaintiff had never reviewed the petition.  He testified that he did not review it because he relied on his wife to prepare the petition in concert with Mr. Peacock.  Plaintiff further testified that at no point prior to his deposition in this case (which was taken on October 31, 2005) did he realize that he was required to disclose his Title VII claim in the bankruptcy case.  Plaintiff and his wife further testified that even if they had disclosed the Title VII claim against defendant, they would have still proceeded with the bankruptcy filing.

Mrs. Wheeler testified that she returned the bankruptcy petition to Mr. Peacock's office and briefly discussed it with Nancy Johnson (Mr. Peacock's paralegal) before it was filed. Based on the testimony at the hearing, it is not entirely clear what occurred during this meeting. Mrs. Wheeler testified that she left the question on the Statement of Financial Affairs concerning "suits and administrative proceedings" blank until she could inquire of Ms. Johnson about how to answer that question in light of her husband's then pending EEOC charge. According to Mrs. Wheeler, Ms. Johnson responded that unless there was an outcome of the case, the Wheelers need not disclose the proceeding. Ms. Johnson testified that she was not at the initial meeting with Mrs. Wheeler and Mr. Peacock and that she does not recall any meeting with Mrs. Wheeler wherein Mrs. Wheeler asked any specific questions concerning the petition. Ms. Johnson testified, however, that her normal practice upon receiving any inquiry about a pending lawsuit or administrative proceeding would be to ask the client to bring in a copy of any legal filing or administrative complaint so that she and Mr. Peacock could make a determination concerning whether it needed to be disclosed.

### III. THE COURT'S DECISION

#### A. Legal Doctrines

In <u>Parker</u>, the Eleventh Circuit questioned its prior holding in <u>Burnes</u> when it stated:

The correct analysis here compels the conclusion that judicial estoppel

-9-

> should not be applied at all. Moreover, based on our analysis which follows, it is questionable as to whether judicial estoppel was correctly applied in Burnes. The more appropriate defense in the Burnes case was, instead, that the debtor lacked standing.

368 F.3d at 1272. Because the Eleventh Circuit in Parker and in the Burnes trilogy (Burnes, De Leon and Barger) utilized different legal doctrines to decide cases with similar facts, a threshold issue is whether that invokes the prior panel doctrine to this case.[4] While there is certainly an interrelationship between standing and judicial estoppel in these cases, the Court finds that the prior panel doctrine does not apply in this situation. Even recognizing the language in Parker criticizing the prior Burnes holding is likely dicta, it remains that the Parker panel and the Burnes panel merely applied different legal doctrines to decide cases with similar facts.[5]

### B.   Standing

In Parker, the Eleventh Circuit is clear that only the trustee has standing to pursue a pre-petition cause of action. 365 F.3d at 1272. Thus, as in Parker, once the

---

[4]   In Burke-Fowler v. Orange County, Fla., 447 F.3d 1319 (11th Cir. 2006), the Eleventh Circuit recapitulated its prior panel doctrine by stating, "when a later panel decision contradicts an earlier one, the earlier panel decision controls." Id. at 1323 n. 2 (citing Walker v. Mortham, 158 F.3d 1177, 1188-89 (11th Cir. 1998)).

[5]   Parker applied standing, thus seemingly negating the need to consider judicial estoppel in most cases. 365 F.3d at 1372. Burnes did not perform the standing analysis and applied judicial estoppel. 291 F.3d at 1285-86. As plaintiff points out, there is not a true intra-circuit split (at least with a comparison of Parker and Burnes) on the applicable law concerning either of these legal doctrines. Instead, both legal doctrines arguably apply to cases such as that at bar, and the determination of which doctrine to apply, or whether to ultimately apply both, is based on the facts of each case. Thus, the Court does not find a true intra-circuit split of authority.

Wheelers filed their Chapter 7 bankruptcy petition, the trustee herein (Gregory Crews) became the real party in interest to the portion of plaintiff's Title VII claim seeking money damages.  However, defendant asserts that this case is distinguishable from Parker in that the trustee in that case moved to intervene in the discrimination suit before the defendant moved to dismiss on the grounds of judicial estoppel; here, the trustee seeks to be substituted in as the proper party plaintiff, but only after defendant filed its motion for summary judgment.  This distinction is unavailing and unnecessarily places form over substance.

Rule 17(a), Federal Rules of Civil Procedure, provides, in pertinent part, "[e]very action shall be prosecuted in the name of the real party in interest. ... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest...."  Rule 25(c), Federal Rules of Civil Procedure, states, "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."  Reading Rules 17(a) and 25(c) together, it is indeed appropriate to substitute the trustee as the proper party plaintiff to the portion of plaintiff's Title VII claim that seeks money damages. See Barger, 348 F.3d at 1292-93 (even though the district court never directed the trustee to substitute for the plaintiff or join her, the trustee took plaintiff's place as late

-11-

as the appellate level).

In its post-hearing memorandum, defendant cites Jones v. Clayton County, 2006 WL 1627117 (11th Cir. June 7, 2006) (unpublished opinion) and Baxley v. Pediatric Servs. of America, Inc., 147 Fed. Appx. 59 (11th Cir. 2005) (unpublished opinion) for the proposition that summary judgment is appropriate because the plaintiff/ debtor lacked standing to pursue the claims asserted in the Title VII case. However, a close reading of Jones and Baxley illustrates that those cases are distinguishable from the present one. In affirming summary judgment for the defendant in Jones on standing grounds, the Eleventh Circuit noted that "plaintiff had put forth no arguments, either in the district court or on appeal, addressing his lack of standing to bring this action...." 2006 WL 1627117, *1. Moreover, in both Jones and Baxley, there was no discussion as to whether the trustee sought to intervene in the discrimination suit or whether the plaintiffs therein sought to substitute in the trustee as the real party in interest.

In the present case, however, the trustee, upon learning of plaintiff's Title VII claim, promptly moved to reopen the bankruptcy case to include the Title VII claim; the bankruptcy court immediately reopened the bankruptcy case. Moreover, the trustee appeared and testified at the evidentiary hearing in this case and stated that it was his intent to pursue the pending Title VII claim seeking damages on behalf of the bankruptcy estate. Thus, under Rule 25(c), Federal Rules of Civil Procedure, it is appropriate at this juncture to substitute the trustee (Gregory Crews) for plaintiff as

the true party plaintiff on the claim seeking monetary relief.  See Barger, 348 F.3d at 1292-93.  Because Gregory Crews is substituted as the plaintiff for the portion of plaintiff's Title VII claim seeking money damages, defendant's motion for summary judgment is due to be denied.

### C.     Judicial Estoppel

In this Court's view, the resolution of the standing issue negates the need to perform the judicial estoppel analysis.  Here, like in Parker, the trustee did not make a false or inconsistent statement under oath in a prior proceeding, is not "tainted" by any such statements made by plaintiff and has explicitly shown a willingness to proceed with the claim.

However, to the extent the Eleventh Circuit's decision in Barger requires that this Court undertake the judicial estoppel analysis even after it has substituted the trustee in as the proper party plaintiff under Rule 25(c), the Court does so.[6]  It is

---

[6]    After the Barger court substituted the trustee as the proper party plaintiff (which occurred at the appellate phase of the case), it nevertheless appeared to equate the trustee and the plaintiff therein as the same for purposes of application of judicial estoppel.  348 F.3d at 1293-97.  What was not entirely clear in Barger, however, is whether the trustee had any intent to actually pursue the Title VII suit.  Id. at 1298 n. 2 (J. Barkett, dissenting) (noting that "[a]lthough the majority infers that Barger benefitted from non-disclosure, one might equally infer that the trustee's decision not to pursue the claim after it was brought to his attention (and his failure to act upon it subsequently) implied that the outcome in Barger's bankruptcy case would not have changed...."); see also In re Barger, 279 B.R. 900, 907 (Bkrtcy. N.D. Ga. 2002) (granting Barger's motion to reopen her underlying Chapter 7 bankruptcy case and noting the trustee's "initial lack of interest ... in pursuing the [discrimination] claim after its disclosure to him").  Ultimately, the Barger court, without the district court having held an evidentiary hearing, determined that plaintiff knowingly took inconsistent positions in the bankruptcy proceeding and the Title VII case, that plaintiff had a

-13-

undisputed that plaintiff took an inconsistent position under oath in the bankruptcy proceeding when he failed to reveal that he had filed a charge of discrimination and instituted an "administrative proceeding" before the EEOC. Further, plaintiff filed this Title VII suit in October 2004, and, at that time, did not seek to reopen the bankruptcy case to amend his Statement of Financial Affairs.

The issue here is whether, under the second factor, plaintiff's action of taking the inconsistent position was "calculated to make a mockery of the justice system," see Parker, 365 F.3d at 1271; Barger, 348 F.3d at 1293-94; Burnes, 291 F.3d at 1285, and "[a] cold manipulation and not an unthinking or confused blunder," Ajaka, --- F.3d ---, 2006 WL 1765425 at *3 n. 7 (citation omitted). This Court is unaware of whether any district court has held an evidentiary hearing to assess this second aspect of the judicial estoppel test. While Eleventh Circuit precedent certainly permits a district court to infer "deliberate or intentional manipulation" from the record, see Barger, 348 F.3d at 1294 (citing Burnes, 291 F.3d at 1287), those cases do not foreclose a district court from holding an evidentiary hearing to discern whether a plaintiff actually possessed the requisite nefarious intent.[7]

---

motive to do so in that the omission of the Title VII claims allowed her to obtain a recovery and ostensibly keep it from the bankruptcy creditors and that this was sufficient to find that plaintiff intended "to make a mockery of the justice system." Id. at 1294-96.

[7]   The Eleventh Circuit's holding in De Leon is consistent with Barger inasmuch as both decisions can be read to recast Burnes and appear to equate knowledge of claims and a motive to conceal the claims with an intent to "make a mockery of the justice system." De Leon, 321 F.3d at 1291; Barger, 348 F.3d at 1295-96. However, other portions of both De Leon and Barger contain language that merely permit, rather

Here, that evidentiary hearing disclosed that plaintiff entirely relied on his wife to hire a bankruptcy attorney (Ron Peacock), attend the initial consultation with Mr. Peacock, handle all aspects of the bankruptcy filing, including the preparation of the Statement of Financial Affairs, and finalize the bankruptcy petition for filing. Plaintiff signed the bankruptcy petition without review. While signing a legal document without reviewing it or having any real understanding of its contents is certainly ill-advised (especially when doing something as serious as filing for protection under Chapter 7 of the bankruptcy code under penalty of perjury), plaintiff's actions do not illustrate a calculation to "make a mockery of the justice system" or "[a] cold manipulation" thereof. See Parker, 365 F.3d at 1271; Barger, 348 F.3d at 1293-94; Burnes, 291 F.3d at 1285; Ajaka, --- F.3d ---, 2006 WL 1765425 at *3 n. 7. Instead, my credibility judgment is that plaintiff's actions were that of an unsophisticated individual who had little, if any, understanding of the bankruptcy process, much less the potential

---

than require, an inference of intent to mislead when there is knowledge of claims and a motive to mislead. De Leon, 321 F.3d at 1292; Barger, 348 F.3d at 1296. Reading Burnes, Barger and De Leon together, along with the Supreme Court's decision in New Hampshire, this Court finds that a litigant is not ipso facto estopped from proceeding on claims that were not originally disclosed in a bankruptcy petition even if there was a potential motive to take inconsistent positions in both cases. Thus, under Burnes and its progeny, the inference of intent is permissive, and not mandatory. Further, during the evidentiary hearing in the present case, defendant's counsel candidly acknowledged that the two part test for judicial estoppel articulated in Burnes is not an absolute standard, but, in essence, requires the district court to make a factual finding as to whether the plaintiff had the requisite intent to "make a mockery of the judicial system." This Court endeavored to make that finding with the assistance of an evidentiary hearing.

ramifications of failing to disclose the then pending EEOC charge.  Thus, reviewing the evidence of plaintiff's actions as a whole, this Court does not find any nefarious intent to dupe this Court by taking inconsistent positions designed to gain an unfair advantage.  Instead, plaintiff's actions were more akin to "an unthinking or confused blunder."  See Ajaka, --- F.3d ---, 2006 WL 1765425 at *3 n. 7.

Moreover, of particular importance is the consideration of the purpose of the application of judicial estoppel.  Judicial estoppel is designed to protect the interests of the courts, not the parties.  See Snowden v. Fred's Stores of Tennessee, 419 F. Supp. 2d 1367, 1374-75 (N.D. Ala. 2006) (citing Burnes, 291 F.3d at 1286).  Here, after determining during plaintiff's October 31, 2005 deposition that plaintiff had not disclosed his Title VII claim to the trustee, defendant moved with haste and two days later (November 2, 2005) filed its motion for summary judgment based on judicial estoppel and standing grounds.  The trustee moved to reopen the bankruptcy case to include the Title VII claim on November 14, 2005.  (Doc. 42-3, Ex. "2").  The bankruptcy case was re-opened on November 17, 2005.  (Id. at Ex. "3").  To hold, as defendant suggests, that merely because defendant filed its motion before the trustee sought to re-open the bankruptcy case requires a finding of judicial estoppel, puts tactics over substance, when the real considerations are the plaintiff's intent and whether plaintiff has damaged the interests of this Court.  See Burnes, 291 F.3d at 1286 ("[t]he doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants").  Here, there is no evidence that this Court's interests have been

damaged.[8]  However, to disallow this claim would potentially damage the creditors of the bankruptcy estate, who would be the real beneficiaries (not plaintiff) of any recovery in this case.

## IV.   CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment is due to be denied.  Thus, the trustee, joined as a co-plaintiff, is permitted to pursue plaintiff's Title VII retaliation claim for monetary damages on behalf of the bankruptcy estate.  However, pursuant to Burnes, because plaintiff's claim for injunctive relief contained in paragraph "E" of the "Prayer for Relief" in plaintiff's Complaint is of no monetary value to the bankruptcy estate, plaintiff is permitted to remain as a plaintiff along with the trustee for the limited purpose of pursuing the equitable relief.  See 291 F.3d at 1289.

Accordingly, it is hereby **ORDERED**:

1.     Defendant's Motion for Summary Judgment (Doc. 35) is **DENIED**.

2.     Defendant's Motion for Leave to File a Further Memorandum of Law (Doc. 56) is **DENIED**.

3.     Plaintiff's Motion to Consolidate Cases (Doc. 43) is **DENIED**.  This same motion was filed in Irene S. Johnson, et al. v. Florida Dep't of Corrections, Case No. 3:04-cv-522-J-25HTS (Johnson Doc. 151).  On March 31, 2006, Judge Adams denied

---

[8]   Whether the Bankruptcy Court views plaintiff's unthinking action in signing the Statement of Financial Affairs differently is for the Bankruptcy Court to decide.

the motion as untimely (Johnson Doc. 221) presumably because the Johnson case is ready to be tried. This case will proceed independently.

4. This case is **SET** for a telephone status conference before the undersigned on **Thursday, September 7, 2006 at 4:00 p.m.** in Courtroom 10B, Tenth Floor, United States Courthouse, 300 N. Hogan Street, Jacksonville, Florida. Among the topics to be discussed are a case management schedule and whether an amended complaint is required because of the addition of the trustee as a co-plaintiff. Plaintiff's counsel shall coordinate the conference call and then with defendant's counsel on the line, call the Court's audio conference number at **904-301-6812. The call should be placed to the Court five minutes prior to the scheduled hearing time.**

**DONE AND ORDERED** at Jacksonville, Florida this 9th day of August, 2006.

*[signature]*
TIMOTHY J. CORRIGAN
United States District Judge

t.
Copies to: counsel of record